LEON JONAS LANG V. THE STATE.

No. 20700.  Delivered January 10, 1940.
Rehearing Denied February 21, 1940.

The opinion states the case.

*Robert P. Brown,* of San Angelo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, Judge.
The offense is nighttime burglary of a private residence; the punishment, confinement in the penitentiary for five years.

The injured party, Mr. J. A. Casey, testified that he and his wife left their residence about 7:30 p. m. on the 9th day of January, 1939; that it was dark and the lights were on at the time; that all the doors and openings of the house were closed when they left; that they later returned and found the house in disorder; that some of the property taken from the house consisted of his wife's winter coat, her suit case, a piece of costume jewelry, several suits of underwear, some shirts, a pair of white shoes, some pins, a tie clasp, and a pair of white gloves; that he later recovered some of the articles at the city hall and was able to identify them as being his property; that among the articles recovered were the white shoes which belonged to him; that he did not give the appellant nor any other person his consent to enter the house and take his property.

A city policeman testified that he recalled the occasion on January 9, 1939, when the residence of Mr. Casey was burglarized. He said: "That was reported to me at that time. I know the defendant in this case. I first saw him on the next morning about 11:30 o'clock after the burglary was reported." The witness testified further, as follows:

"On the occasion when I saw the defendant, I had started up North Chadbourne Street, and I saw two negro boys coming east on West Fifth Street, and one of them was carrying a little brown over-night suit case, and I thought I would talk to them and see who they were, and when I got right close to them I saw the end of the suit case was busted like the one that was lost, and I drove up by the side of these boys and asked them where they were going and what their names were, and they told me they were going to Sweetwater; going to hitch hike out of town, and I told them to get in the car and I would take them to the police station and check up on them and carry them out on the road.

"This defendant is one of the two boys I refer to. At that time the defendant was carrying something rolled up in a newspaper.

"I opened the door for the boys to get in the car and they broke and ran up the alley between Fifth and Sixth Streets. I shut the door and circled the block and ran them back in the alley. They would run back and forth. I couldn't catch them, and one of them throwed the suit case down and the other picked it up. Then along about 115 West 5th Street, there was a house there and they ran behind the house, and one of them went north and the other went across the railroad track and

I took after the one that went north, because I couldn't cross the railroad tracks in the car, and he ran into a yard and I hollowed for him to stop, and he stopped and came walking towards me and got a house between us and broke and run again and I shot.

"When I stopped the defendant he had something wrapped up in a newspaper under his arm, and both of his pockets stuck out. He had pretty good sized packages in his pockets.

"I saw that suit case later. When I couldn't find them any more, I circled back by the house and found where they had thrown the suit case and package over in the yard. The defendant had passed by that yard; I saw him pass by there. I was able to identify the suit case I found there as being the same one that was in the possession of the two negro boys. I took the suit case and package to the police station. The package contained a pair of white shoes. I took the package with the white shoes in it to the police station, and later turned them over to Mr. Casey. I also turned the suit case over to Mr. Casey. That is Mr. J. A. Casey."

Appellant insists that the testimony fails to show that the burglary was committed in the night time. We are unable to agree with this contention. It is observed that Mr. Casey testified that he left his house about 7:30 p. m., January 9th, and that it was dark at the time. The policeman who recovered the stolen property testified, in effect, that the burglary was reported to him on January 9, 1939. Again, it was his version that he saw the appellant the next morning "about 11:30 o'clock after the burglary was reported." At that time he recovered the stolen property. We think the testimony we have referred to sufficient to show a night-time burglary.

We are also unable to agree with appellant's contention that the circumstances are insufficient to exclude every other reasonable hypothesis except appellant's guilt. The proof, in our opinion, shows that shortly after the burglary appellant was in possession of some of the property which had been taken from the home of the injured party. His possession of such property was unexplained.

The judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant complains in his motion relative to the indentification of the package which the witness Boyd testified he saw in appellant's hands at the time appellant and his companion were first accosted by Mr. Boyd, the police officer, and urgently insists that the identification of this package with the one found in the yard, near where appellant and his companion passed in their flight from the officer, is so vague and indefinite that the same can not be considered the possession of recently stolen property. We do not think so. It is shown that appellant and his companion were in possession of a broken suit case, as well as a package wrapped up in a newspaper and tied with a string, such package having the shape and contour of shoes. That when accosted, appellant fled, and when later seen had no such package with him, but same was found in a yard, directly on the route followed by appellant in his flight. That it was the same package the witness was positive. He testified:

"I saw the package which I have testified to in the possession of the defendant, Leon Lang, and later on I found a similar package; those packages looked alike. I know they were one and the same package. It is my opinion that the packages were one and the same, based on the fact that they looked alike, because it was wrapped in a newspaper with a string tied around it. I know the two packages were the same one. I did not put any mark of identification on the package at the time I stopped the two boys. It is my opinion the packages were one and the same, based on the fact that they looked alike, because it was a newspaper and tied with a string. I looked at the package real well when I was talking to the two boys, and I noticed the size and shape of the package. You could tell the way it was wrapped what was in it. I didn't see the shoes in the package, but you could tell the shape of them; you could tell what was in it. The packages were the same; they were similar in shape and size. I can't tell the jury any peculiar way it was wrapped; it was just wrapped up with a string around it. It was about the only way you can wrap up shoes, I imagine."

We think this identification is sufficiently positive to meet the rules of circumstantial evidence. These shoes were a part of the property taken from the house.

The motion is overruled.