Francisco **RESENDEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 49912.

Court of Criminal Appeals of Texas.

May 28, 1975.

Bruce J. Ponder, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., and Anita Ashton, Asst. Dist. Atty., El Paso, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

This is an appeal from a conviction for the offense of burglary of a private resi-dence at night. The punishment, enhanced under the provisions of Article 63, Vernon's Ann.P.C., is life imprisonment. The appellant urges that evidence obtained by an unlawful search was erroneously admitted, the evidence is insufficient to support the conviction, the court erred in refusing to dismiss the enhancement paragraphs of the indictment, and the court erroneously refused to grant a new trial when jury misconduct was proved.

Prior to September 20, 1973, El Paso police officers had information that stolen goods were being received and concealed at 1322 Wright Street, and on September 20th the officers set up a surveillance at that address which was the residence of Jesus Erives. The officers stationed themselves on the third floor of a school building where they could observe Erives' house at approximately 7:00 p. m. when it was "just getting dark." At 11:10 p. m. the officers saw the appellant and Danny Garcia come to Erives' residence in a 1963 model white four-door Ford Fairlane automobile. The two men got out of the automobile and went up to Erives' house. The two men returned to the automobile in about half an hour and left.

On the evening of September 21st, at approximately 9:30 p. m. Officer Turner of the El Paso Police Department, who apparently was unaware of the surveillance being conducted on Erives' house, stopped a white Ford Fairlane automobile for a traffic violation. The driver did not have an operator's license and represented to the officer that his name was Carlos Montoya. Turner testified that the appellant was a passenger in the automobile. Turner later learned that the man who told him his name was Carlos Montoya was actually Daniel Garcia. While the car was stopped its driver opened the trunk, and Officer Turner observed that there was nothing in the trunk except a spare tire and a jack.

At approximately 12:30 a. m., September 22nd, the officers who had Erives' residence under surveillance saw the appel-

lant and Danny Garcia come to the Erives' house in the same car they had been in the night before. They walked to the entrance of the house, stayed about one minute, and returned to their automobile. The appellant and Garcia were seen to remove what appeared to be a gun in a case and other smaller items from the trunk of the automobile and carry them into Erives' house. The officers who had the house under surveillance called other officers who were nearby, and they surrounded Erives' house. One of the officers, as he approached the house, heard a voice which he was later able to identify as that of the appellant say: "That is all we could get." When the appellant and Garcia came out of the house they were arrested.

One of the officers knocked on the door. Although the evidence is in conflict as to whether Erives asked the officers to come in or they asked him to come outside, he did come outside and get in a police automobile. When one of the officers said he could get a search warrant to search Erives' house, Erives said that he had nothing to hide and that the officers didn't need a search warrant to search the house. Erives testified he then voluntarily signed a consent form giving the officers permission to search his house. The officer testified that he advised Erives of his constitutional rights and that he did not have to sign the form consenting to the search. The officers entered the house, and one of them saw a rifle case protruding from under the couch in the living room and upon searching found that it contained a rifle. They also found a handgun with a holster and two cameras under the couch. Erives testified that the appellant and Garcia brought the guns and cameras to his house for him to keep for them.

The officers took the property believing it was stolen property, but since they had no complaint and did not know who owned the property they released the appellant, Garcia, and Erives from custody. One of the cameras contained film. The film found in the camera was developed, and it revealed the picture of a young woman. At the officers' request a local television station showed the picture of the young woman on September 25th. A friend of Mrs. Wesley Albert recognized the picture shown on television to be Mrs. Albert and called her. Mrs. Albert and her husband then found that a rifle, a pistol, two cameras, and other property were missing.

The picture of Mrs. Albert had been taken by her husband on her birthday, September 15, 1973. On September 21st at about 7:30 p. m. the Albert family had gone to a friend's home to help the friend celebrate her birthday. The Alberts played cards with their friends and returned home at about 11:30 p. m. Mr. Albert remembered that after they had entered the house when they came home on that night he thought he had heard the latch moved on a gate near the back door. Mrs. Albert remembered that on September 21st she had placed some pennies in a pickle jar which was kept in a bedroom closet. On September 22nd she did not see the jar in its usual place when she went to get her sewing kit which she kept close to the pickle jar in the closet. She did not become overly concerned about it; she thought she might not have returned the jar to the closet. On September 25th, after they had heard about Mrs. Albert's picture being on television, the Alberts contacted the police department and identified the property which had been taken. The other items which were recovered had been kept in the same bedroom where the pennies in the pickle jar had been kept. Pry marks were found on the back door, and a large piece of wood was missing on the back door.

 The appellant urges that the search of Erives' house was unlawful because his consent to the search was unlawfully obtained and that the evidence found was erroneously admitted. Without making the determination, although there is considerable doubt, we will assume that the appellant has standing to complain of the search of Erives' house. See Brown v.

United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). There is no evidence here that force was used to obtain the consent to search as there was in Paprskar v. State, 484 S.W.2d 731 (Tex.Cr. App.1972), nor as in Lowery v. State, 499 S.W.2d 160 (Tex.Cr.App.1973), both relied upon by the appellants. This Court has held that the totality of the circumstances must be considered to determine whether the Fourth Amendment right to be free from an unreasonable search and seizure has been waived by consent to a search, but the burden is upon the State to prove such waiver. The circumstances here presented when considered in their totality are stronger in showing a consent to search than they were in Stephenson v. State, 494 S.W.2d 900 (Tex.Cr.App.1973), where it was said: ". . . we refuse to hold, as a matter of law, that an assertion by the officer conducting the search that he could or would obtain a search warrant if consent is refused, standing alone, invalidates an otherwise voluntary consent." See also Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), and Hoover v. Beto, 439 F.2d 913 (5th Cir. 1971).

The first ground of error is overruled.

■ In his second ground of error the appellant contends that the State failed to prove an essential element of the offense; that is, that the burglary occurred during the nighttime. Nighttime insofar as it relates to burglary is any time of the twenty-four hours from thirty minutes after sunset until thirty minutes before sunrise. Parrish v. State, 138 Tex.Cr.R. 150, 134 S. W.2d 271 (1939); Lee v. State, 459 S.W. 2d 851 (Tex.Cr.App.1970). See Article 1396, V.A.P.C. The jury in this case was instructed on the definition of nighttime and on the law of circumstantial evidence. The Alberts testified that they were not at home from 7:30 to 11:30 p. m., September 21st. Two officers testified that they saw the appellant take the stolen property from the trunk of a white Ford at approximately 12:30 a. m. on September 22nd. Officer Turner testified that he had stopped the same white Ford with the appellant and Garcia in it. The stop occurred at 9:30 p. m., September 21st, and was for a traffic violation unconnected to the present offense. Officer Turner testified that he shined his light inside the car and that the driver opened the trunk while he was present. In neither place did he see any of the stolen property.

■ Mrs. Albert testified that she had placed a jar of pennies on her closet shelf before going out the evening of the 21st and that she missed the jar the following morning. The judge, near the end of the trial, sustained the appellant's objection to the admission of the jar of pennies into evidence and instructed the jury not to consider it. Although the jar of pennies was not admitted into evidence, Mrs. Albert's testimony that the jar had been stolen and when it was last seen may be considered and is of some probative value in determining when the guns and cameras that were in the same room were stolen. We find the evidence, although circumstantial, sufficient to allow the jury to find the burglary was committed during the nighttime. Cf. Clark v. State, 140 Tex.Cr. R. 25, 143 S.W.2d 378 (1940); Lang v. State, 138 Tex.Cr.R. 467, 136 S.W.2d 833 (1940).

The ground of error is overruled.

■ In his third ground of error it is the appellant's contention that Article 63, V.A.P.C., is arbitrarily and capriciously applied in El Paso County and therefore the statute as applied is unconstitutional. Article 63, V.A.P.C., provides:

"Whoever shall have been three times convicted of a felony less than capital shall on such third conviction be imprisoned for life in the penitentiary."

This ground of error is based on a motion to dismiss the enhancement provisions of the indictment and the testimony of an As-

sistant District Attorney who was called as a witness to support the allegations in the motion to dismiss. The sum and substance of the Assistant District Attorney's testimony is contained in the answer to one question. He testified:

"The statement I made to you, Mr. Ponder, was in all situations where there are two prior felonies the office does not automatically request habitual indictments. Each case is investigated for the merits of the case. The background and the prior criminal record of the defendant are checked into. The reason that I gave you that we are pursuing an habitual indictment in this case is that the defendant in this case has some five prior felony convictions."

Later on the prosecutor corrected his testimony by stating that the "rap sheet" revealed that the appellant had been convicted on three rather than five prior occasions. This evidence falls far short of showing that Article 63, V.A.P.C., is arbitrarily and capriciously applied in El Paso County. Therefore, we need not further consider the appellant's ground of error because it is not supported by evidence in the record. See Thrash v. State, 500 S. W.2d 834 (Tex.Cr.App.1973), where the same contention was overruled.

█ The ground of error concerning jury misconduct is without merit since it finds no support in the record. The appellant's motion for new trial which alleges jury misconduct was timely filed on April 19, 1974. However, the motion was not amended and the original motion was not heard and acted upon until May 17th. When the motion was to be heard the Assistant District Attorney called the court's attention to Article 40.05, Vernon's Ann.C. C.P., which provides that a motion or amended motion for new trial shall be determined by the court within twenty days. The prosecutor then cited Steward v. State, 422 S.W.2d 733 (Tex.Cr.App.1968). In Steward v. State, supra, this Court said the motion for new trial was overruled by operation of law, prior to such hearing, when not acted upon during the twenty days allowed by Article 40.05, V.A.C.C.P. See also Grimes v. State, 171 Tex.Cr.R. 298, 349 S.W.2d 598 (1961); St. Jules v. State, 438 S.W.2d 568 (Tex.Cr.App.1969); Roberts v. State, 493 S.W.2d 849 (Tex.Cr. App.1973); Jones v. State, 501 S.W.2d 677 (Tex.Cr.App.1973).

The ground of error is overruled.

The judgment is affirmed.

Opinion approved by the Court.