Reginald Keith **WILLIAMS**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 01–94–00805–CR to 01–94–00807–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 21, 1996.

Mark Ellis, Houston, for appellant.

John B. Holmes, Keli J. Roper, Houston, for appellee.

## EN BANC OPINION

HUTSON–DUNN, Justice.

Appellant Reginald Keith Williams entered guilty pleas to possession of a controlled substance (two cases) and possession of a controlled substance with intent to deliver, and pleas of true to two enhancement paragraphs in each case. Pursuant to a plea bargain agreement, the trial court assessed punishment at 50–years imprisonment in each case. Appellant challenges the trial court's ruling on his motion to suppress evidence. We address the lawfulness of a forced reentry by police into a residence where moments before an undercover officer had observed cocaine during arrangements for its purchase. Pursuant to TEX.R.APP.P. 79(e), we hear this appeal en banc and affirm.

### Facts

On August 2, 1993, Officer Walter Redman of the Houston Police Department learned from a confidential informant that appellant was selling drugs. That evening, Redman and his partner, Officer Donald DeBlanc, met with the confidential informant and Andrea Thompson in a Burger King parking lot to discuss the purchase of a kilogram of cocaine. Thompson examined and counted the purchase money and left to get approval for the sale. She returned and told the officers they could follow her to the place where they could complete the purchase.

The officers followed Thompson to appellant's residence. Appellant owned a fourplex apartment and was standing outside when the officers arrived. Officer DeBlanc stayed in the unmarked car while Officer Redman got out and discussed the initial details of the sale with appellant. Appellant and Redman agreed Redman would go inside appellant's apartment to see the cocaine. If Redman was satisfied, he would go out to his car to get the money and return inside to complete the deal.

Appellant and Officer Redman entered appellant's apartment and went upstairs, and appellant told his common-law wife, Michelle Griffin, to go downstairs and get the cocaine. She returned with a sealed package. Redman cut into the package and saw what appeared to be cocaine. He told appellant he was satisfied with the product and left the apartment to get the money. Griffin accompanied Redman downstairs to the first floor entrance of the fourplex while appellant stayed upstairs. Griffin stood in the doorway, and Redman walked just outside the doorway and gave a secret "bust" signal to Officer DeBlanc to call in the police raid team.

Within seconds, the raid team drove up in marked and unmarked cars. When Griffin saw them, she slammed and locked the front wooden door but was not able to close the outside door made of burglar bars. The raid officers forced entry into the apartment. They heard a gunshot just after they entered the fourplex. Once inside, the raid officers went upstairs, entered appellant's apartment, and arrested him and Griffin. They found in the bathroom toilet the kilogram of cocaine Officer Redman had purportedly attempted to purchase. Appellant then signed a consent to search form, and the officers searched appellant's apartment with appellant accompanying them and found cocaine inside appellant's dresser, cocaine inside a safe, and "black tar type" heroin in the refrigerator.

### Lawfulness of Forced Reentry

In two points of error, appellant contends the trial court erred in overruling appellant's motion to suppress: (1) evidence that was seized as part of an illegal arrest; and (2) additional evidence that was seized after appellant was coerced into signing a consent to search form immediately after the illegal arrest. Appellant contends his arrest was illegal under the United States and Texas Constitutions and the Texas Code of Criminal Procedure. U.S. CONST. amend. 4; TEX. CONST. art. 1, § 9; TEX.CODE CRIM.PROC. art. 38.23 (Vernon Supp.1996).[1] The legality of

---

1. Appellant has not advanced a theory for inter-
preting the Texas Constitution differently from

the arrest hinges upon the lawfulness of the forced reentry into appellant's residence by the police raid team, moments after undercover officer Redman observed cocaine while arranging to purchase it.

## A. Standard of Review

■ At a hearing on a motion to suppress, the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Bell v. State,* 866 S.W.2d 284, 286–87 (Tex.App.— Houston [1st Dist.] 1993, no pet.). The trial court may accept or reject any or all of the witnesses' testimony. *Taylor v. State,* 604 S.W.2d 175, 177 (Tex.Crim.App.1980); *Vercher v. State,* 861 S.W.2d 68, 70 (Tex.App.— Houston [1st Dist.] 1993, pet. ref'd).

■ On appeal, our only role is to determine whether the trial court improperly applied the law to the facts. *Romero,* 800 S.W.2d at 543; *Bell,* 866 S.W.2d at 287. Unless the trial court clearly abused its discretion, we will not disturb its findings. *Rivera v. State,* 808 S.W.2d 80, 96 (Tex.Crim.App. 1991); *Sandoval v. State,* 860 S.W.2d 255, 257 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd). We view the evidence in the light most favorable to the ruling of the trial court. *Sandoval,* 860 S.W.2d at 257. If the evidence supports the trial court's ruling, we do not disturb that ruling. *Banda v. State,* 890 S.W.2d 42, 51–52 (Tex.Crim.App.1994); *Vercher,* 861 S.W.2d at 70.

## B. Warrantless Entry to Arrest

■ The Code of Criminal Procedure provides a peace officer may arrest a defendant without a warrant for any offense committed within the officer's presence or view. TEX. CODE CRIM.PROC. art. 14.01(b) (Vernon 1977). However, an officer may not enter a residence to make a warrantless arrest unless: (1) the person who lives in the residence consents to the entry; or (2) exigent circumstances require the officer making the arrest

to enter the residence without a warrant or the consent of a resident. TEX.CODE CRIM. PROC. art. 14.05 (Vernon Supp.1996).[2] The Code is consistent with United States Supreme Court decisions, which hold that, absent special situations, *i.e.,* consent or exigent circumstances, the entry into a residence to conduct a search or make an arrest is unreasonable under the fourth amendment unless done pursuant to a warrant. *Steagald v. United States,* 451 U.S. 204, 211, 101 S.Ct. 1642, 1647, 68 L.Ed.2d 38 (1981); *see also Payton v. New York,* 445 U.S. 573, 576, 100 S.Ct. 1371, 1374–75, 63 L.Ed.2d 639 (1980) (fourth amendment prohibits police from making a warrantless and non-consensual entry into a suspect's residence for the purpose of making a routine felony arrest); *Green v. State,* 727 S.W.2d 263, 266 (Tex.Crim.App. 1987).

Several Texas cases have upheld convictions based on evidence that was retrieved pursuant to a warrantless arrest executed under facts virtually identical to the facts of this case. In these cases, arrests were upheld under TEX.CODE CRIM.PROC.ANN. art. 14.01 (Vernon 1977) where an undercover officer entered the defendant's house or apartment to negotiate a drug sale, momentarily left after viewing the drugs to give the "bust" signal, and a team of arresting officers immediately entered the defendant's residence without his consent to execute the arrest. *See, e.g., Sanchez v. State,* 797 S.W.2d 951, 952–53 (Tex.App.—Dallas 1990, no pet.); *Caraballo v. State,* 706 S.W.2d 773, 773–74 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd); *Gonzales v. State,* 638 S.W.2d 41, 43–45 (Tex.App.—Houston [1st Dist.] 1982, pet. ref'd). However, none of these cases discuss the applicability of article 14.05, *Steagald,* or *Payton.*

■ An officer may enter a residence to make a warrantless arrest if the person who lives in the residence consents to the entry. *Payton,* 445 U.S. at 576, 100 S.Ct. at 1374–

---

the United States Constitution, and we therefore will not address his argument that the officers' warrantless arrest violated the Texas Constitution. *See Heitman v. State,* 815 S.W.2d 681, 690–91 n. 23 (Tex.Crim.App.1991).

**2.** The evidence as presented in this case does not establish that the officers acted under the theory of exigent circumstances "to prevent the destruction of evidence or contraband."

75; TEX.CODE CRIM.PROC. art. 14.05 (Vernon Supp.1996). Appellant consented to Officer Redman's initial entry into appellant's apartment. Although Redman posed as an undercover drug purchaser, this did not invalidate appellant's consent. *See Lewis v. United States,* 385 U.S. 206, 211, 87 S.Ct. 424, 427, 17 L.Ed.2d 312 (1966); *Cunningham v. State,* 848 S.W.2d 898, 905 (Tex.App.—Corpus Christi, 1993, pet. ref'd). Further, although Officer Redman left the apartment momentarily to give the signal to the police raid team, officers arrived within 30 seconds to execute the arrest.

In a line of cases with facts similar to the facts of this case, the United States Court of Appeals for the Seventh Circuit has held that, if a defendant consents to entry by an undercover officer or police informant, that person may allow other police officers to enter to make the arrest. *See, e.g., United States v. Jachimko,* 19 F.3d 296, 298–99 (7th Cir.1994); *United States v. Diaz,* 814 F.2d 454, 459 (7th Cir.1987). In *Diaz,* the court stated:

> We emphasize that we have applied this doctrine of "consent once removed" only where the agent (or informant) entered at the express invitation of someone with authority to consent, at that point established the existence of probable cause to effectuate an arrest or search, and immediately summoned help from other officers. We do not intend to suggest by our analysis that one consensual entry means that law enforcement agents may thereafter exit and enter a home at will.

814 F.2d at 459.

Based on the doctrine of "consent once removed," we uphold as lawful the warrantless reentry by police of appellant's residence to arrest appellant.

We overrule point of error one.

### Consent to Search

■ In point of error two, appellant contends the trial court committed reversible error by refusing to suppress evidence obtained under the authority of a consent to search given under duress and immediately after an illegal arrest. Because we have already held appellant's arrest was legal, we only consider whether appellant gave his consent to search under duress. The facts relevant to appellant's consent to search are as follows.

#### A. The State's Witnesses

Officer Redman testified he entered the apartment after the raid team, and he saw Officer DeBlanc speaking to appellant in the hall. Redman saw DeBlanc advise appellant he was under arrest and DeBlanc give appellant his legal warnings. During this conversation, Redman did not observe anything to indicate DeBlanc was threatening or coercing appellant.

Officer DeBlanc testified he went upstairs in appellant's apartment after the raid team had already gone inside to arrest appellant and Griffin. Both appellant and Griffin were handcuffed. DeBlanc took appellant into the hallway, had the patrol unit take his handcuffs off, and advised appellant of his rights. DeBlanc had his raid jacket on and a gun concealed in his waist, but he did not remove the gun.

Once Officer DeBlanc was sure appellant fully understood his rights, he asked appellant if there were any other drugs in the apartment and appellant responded there were. DeBlanc asked appellant if he would show where the other drugs were located, and appellant said he would. DeBlanc went to his car and got a voluntary consent to search form. DeBlanc returned with the form, explained its contents to appellant, and had appellant read over the form himself. DeBlanc told appellant to initial the form only if he understood it and agreed with it, and appellant said he understood the form. Appellant then filled out the form and signed it. He initialed the sections that said he understood he had a right to refuse to consent to the search, and no promises or coercion had been used to get him to sign form.

On cross-examination, Officer DeBlanc testified all of the officers on the police raid team were armed and had their guns drawn when they entered the apartment because a shot had been fired. DeBlanc entered the building about two minutes later, and most of

the raid team members had already placed their guns in their holsters because the "all clear" signal had been given. About 15 minutes passed between the time DeBlanc reached the second floor and the time he began to discuss the consent to search form with appellant. DeBlanc also testified one of the raid team officers was a white man with long hair in a pony tail.

### B. The Defense Witness

Appellant was the only witness to testify on his behalf, and his recollection of the consent to search was much different than that of Officers Redman and DeBlanc. Appellant testified he heard the raid team break the front door to his apartment within one minute after he and Redman had consummated the drug deal. Appellant panicked, grabbed his cocked and loaded gun when he heard the bang, and accidentally fired a shot.

Griffin screamed appellant's name and ran upstairs to appellant. Appellant saw a black man kneel down at the head of the stairs and point his gun at appellant. The man made appellant put his hands up and turn around. Appellant could not tell whether the man was a police officer.

While appellant was turned around, the raid team entered the room and handcuffed both appellant and Griffin and placed them on the ground. Appellant testified someone hit him in the back of the head with what felt like a pistol. A white officer with a pony tail approached appellant and told him several times he was going to be charged with attempted capital murder because he tried to shoot them.

Appellant stayed on the ground for about two minutes before Officer DeBlanc picked him up and read him his rights. While appellant was getting up, the officer with the pony tail ran up into his face and screamed "he was going to kick my ass for attempted capital murder." Five or six police officers were near appellant when he stood up, and they were all armed.

Officer DeBlanc took appellant into appellant's bedroom with two other officers, who were armed, and discussed whether appellant was willing to consent to a search of the apartment. Appellant testified he agreed to the search, but he was scared and did not feel like he had any choice in the matter. Although DeBlanc told appellant he would not be harmed if he refused to sign the form, appellant testified he did not believe DeBlanc and agreed to the search because he was scared. Appellant read and signed the consent to search form, but he testified he signed the form because it was DeBlanc's idea and he was afraid of the officer with the ponytail. Appellant testified he was scared throughout the entire incident for the safety of both Griffin and himself.

### C. Voluntariness

When the State is relying upon consent to excuse the warrant requirement, the State must prove by clear and convincing evidence the defendant gave his consent freely and voluntarily. *Kolb v. State*, 532 S.W.2d 87, 89 (Tex.Crim.App.1976); *Goines v. State*, 888 S.W.2d 574, 577 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). The State must show the consent was positive and unequivocal and not the result of duress or coercion. *Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim.App.1991); *Goines*, 888 S.W.2d at 577. The State must show the consent to search was not the result of physical or psychological coercion. *Meeks v. State*, 692 S.W.2d 504, 509 (Tex.Crim.App.1985).

The question of whether a defendant voluntary consented to the search is for the trier of fact to determine from all the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2058–59, 36 L.Ed.2d 854 (1973) (when subject of search is not in custody); *Meeks*, 692 S.W.2d at 510; *Goines*, 888 S.W.2d at 577; *Martinez v. State*, 792 S.W.2d 525, 528–29 (Tex.App.—Houston [1st Dist.] 1990, no pet). A defendant's consent to a search is invalid if he made it only in submission to a claim of lawful authority. *Meeks*, 692 S.W.2d at 509; *Kolb*, 532 S.W.2d at 90; *Goines*, 888 S.W.2d at 577. The fact that a person is under arrest or in custody does not, without more, render the consent to search involuntary. *Juarez v. State*, 758 S.W.2d 772, 775 (Tex. Crim.App.1988). It is merely one of the circumstances to be considered. *Id.; Peter-*

son v. State, 857 S.W.2d 927, 932 (Tex.App.— Houston [1st Dist.] 1993, no pet.). A court will not invalidate a consent to search just because the officer told the defendant he would get a warrant if the defendant did not consent. *Resendez v. State,* 523 S.W.2d 700, 703 (Tex.Crim.App.1975); *Goines,* 888 S.W.2d at 578. It is some evidence of consent if the defendant was warned he did not have to consent to the search and had the right to refuse. *Allridge,* 850 S.W.2d at 493; *Martinez,* 792 S.W.2d at 529.

Upon considering all of the evidence in the light most favorable to the trial court's ruling, we hold the court could have reasonably concluded the State proved by clear and convincing evidence appellant's consent was freely and voluntarily given. The trial court was not required to believe appellant's testimony, and it could reasonably conclude from the testimony of Officers Redman and DeBlanc that appellant's consent was positive and unequivocal. The record shows appellant was told he could refuse to consent, he signed the form freely and voluntarily, and he was not subjected to force or coercion from the officers, nor was he promised anything in exchange for his consent. Further, appellant's consent was not rendered invalid due to the fact he only gave his consent in response to a request by Officer DeBlanc. An officer's request for consent does not by itself render a defendant's consent involuntary. *Goines,* 888 S.W.2d at 578.

■ The record shows the police entered appellant's apartment with their guns drawn and placed him in handcuffs. The display of weapons is a coercive factor that sharply reduces the likelihood of freely given consent. *DuBose v. State,* 915 S.W.2d 493, 497 n. 6 (Tex.Crim.App.1996); *Lowery v. State,* 499 S.W.2d 160, 168 (Tex.Crim.App.1973). However, it is only a factor to be considered in the totality of the circumstances and is not alone dispositive. *DuBose,* 915 S.W.2d at 497 n. 6. In this case, the guns were put away and the handcuffs removed when appellant signed the consent to search. *See McFarland v. State,* 834 S.W.2d 481, 485 (Tex.App.—Corpus Christi 1992, no pet.) (defendant voluntarily consented to search, even though police apprehended defendant with guns drawn; nothing indicated officers requested consent with guns drawn). Based on the totality of the circumstances, we hold the trial court did not err by concluding the State proved by clear and convincing evidence appellant knowingly and voluntarily consented to the search of his apartment.

We overrule point of error two.

We affirm the judgment of the trial court.

Original panel consisting of HUTSON–DUNN, O'CONNOR and ANDELL, JJ.

En banc review requested by TAFT, J. Voting for en banc review were SCHNEIDER C.J., and COHEN, HUTSON–DUNN, MIRABAL, HEDGES and TAFT, JJ. Voting against en banc review were O'CONNOR, WILSON and ANDELL, JJ.

HEDGES J., joins HUTSON–DUNN's, J., opinion.

TAFT, J., concurs.

MIRABAL, J., concurs.

SCHNEIDER, C.J., joins MIRABAL's, J., concurrence.

COHEN, J., concurs.

O'CONNOR, J., dissents.

ANDELL, J., joins O'CONNOR's, J., dissent.

WILSON, J., dissents.

MIRABAL, Justice, concurring.

I concur with Justice Hutson–Dunn's opinion. I write separately because, in my opinion, there is no need to "consider a new theory on appeal" in this case. The theory advanced by the State in the trial court was a perfectly valid one.

The State argued in the trial court, and presented evidence showing, that probable cause and exigent circumstances existed warranting the forcible entry into appellant's apartment without a warrant. This case is controlled by *McNairy v. State,* 835 S.W.2d 101, 107 (Tex.Crim.App.1991), and *Covarru-*

*bia v. State,* 902 S.W.2d 549, 554 (Tex.App.—Houston [1st Dist.] 1995, pet.ref'd).

As in *McNairy* and *Covarrubia,* the trial court in the present case could have reasonably concluded from the evidence that the police officers reasonably believed that appellant and his wife were able to dispose of the cocaine. Officer Redman testified cocaine was water soluble and easily disposed of, and he was concerned about appellant's cautious attitude. Appellant boasted that he had been in the business of selling drugs for a long time without being caught. This indicated that appellant would try to destroy the cocaine. Appellant and his wife knew the police were outside, and the cocaine actually could have been destroyed or removed in a matter of minutes. The police heard a shot fired from appellant's apartment. Accordingly, the trial court did not abuse its discretion when it overruled appellant's motion to suppress because the possible destruction of the evidence provided an adequate exigent circumstance warranting the forcible entry into appellant's apartment without a warrant.

I would affirm the judgment for this reason.

SCHNEIDER, C.J., joins this concurring opinion.

COHEN, Justice, concurring.

I agree with Justice Mirabal that the judgment should be affirmed based on exigent circumstances. I write separately to discuss the application in this case of our holding on rehearing in *Sedani v. State,* 848 S.W.2d 314, 318–21 (Tex.App.–Houston [1st Dist.] 1993, pet. ref'd).

*Sedani* held that a judgment should not be affirmed on appeal based on a theory "unheard of at trial" and "on a theory totally different from what [the State] claimed in the trial court." 848 S.W.2d at 319. I am confident that is the law. If it isn't, it should be.

In *Sedani,* the State sought to justify the arrest by contending on appeal, for the first time, that the defendant committed the crime of littering in the arresting officer's presence. The State urged this argument on appeal for the first time, even though the arresting officer had testified at trial that the arrest

was for "totally unrelated reasons," the prosecutor at trial relied on "totally different reasons," and the trial judge upheld the arrest for "totally different reasons." 848 S.W.2d at 319. To have affirmed that case based on littering would have denied the defendant due process of law by imposing upon him a judgment "based on secret reasons not revealed until after [the defendant] has lost the right to be heard." *Id.* at 321. Fortunately, courts do not do that. To its credit, the Court of Criminal Appeals did nothing of the sort in *Calloway v. State,* 743 S.W.2d 645 (Tex.Crim.App.1988), or in any case cited in *Calloway. See Sedani,* 848 S.W.2d at 319–20. Sometimes, however, courts use overly broad language suggesting that such a thing may be done. That, I believe, is what happened in *Calloway,* where the standing issue was not new to the case, but, on the contrary, had been raised and litigated in the trial court. *Calloway,* 743 S.W.2d at 646–49. Thus, I believe that *Sedani* was right when it was decided and is still good law today.

The harder issue is whether *Sedani* prevents this particular judgment from being reviewed now in this court on the theory of "consent once removed." On this issue, I agree with Justice Taft. This is not a theory "unheard of" in the trial court or "totally unrelated" to the facts litigated there. Rather, it is closely related. The facts were developed, and the law is so similar that I am not worried that appellant has been ambushed. In fact, this case's posture resembles that in *Calloway,* where the difference was minor. In *Calloway,* the trial judge incorrectly ruled that the defendant had no standing to -contest the search because he neither owned nor possessed the house. The defendant correctly argued on appeal that standing should not have been determined by ownership or by possession, but by whether he had a reasonable expectation of privacy in the place searched. The Court of Criminal Appeals held that although the judge used the wrong legal test to decide the standing issue, Mr. Calloway was not harmed because no evidence showed that he had standing under the correct test, i.e., that he had a reasonable expectation of privacy. *Calloway,*

743 S.W.2d at 651. This minor difference in legal theory could not have so misled Mr. Calloway as to deprive him of a chance to develop the relevant facts in the trial court hearing. The same is true here.

Consequently, I vote to affirm.

TAFT, Justice, concurring.

While I conclude the State did not adequately prove exigent circumstances, I agree that the officers' forced entry to make an arrest was lawful under the doctrine of consent once removed. Therefore, I join Justice Hutson–Dunn's opinion, but write separately to state my rationales regarding exigent circumstances and application of a new theory on appeal.

### Exigent Circumstances

I agree with Justice O'Connor's opinion that the only evidence of exigent circumstances was: (1) Officer Redman knew that cocaine is water soluble and, thus, disposed of easily; (2) Officer Redman knew there were numerous sinks in appellant's residence; and (3) Officer Redman heard appellant say that he was an experienced dealer who had never been caught and refused to be caught. What is lacking is testimony by Officer Redman that disposal of cocaine is characteristic behavior by persons, like appellant, engaged in drug dealing under similar circumstances. While I believe there actually were exigent circumstances, I don't believe the State sufficiently developed them through the officers' testimony.

### New Theory on Appeal

This case offers two opportunities to consider a new theory on appeal: (1) in determining the lawfulness of the warrantless entry in point of error one; and (2) in determining the flagrancy of the police misconduct for purposes of attenuation analysis in point of error two. Justice Hutson–Dunn's opinion considers a new theory that justifies the warrantless entry and arrest, making it unnecessary to perform an attenuation analysis of any taint to the resulting consent to search. The dissenting opinion by Justice O'Connor refuses to apply a new theory to justify the warrantless entry and arrest, and does not consider a new theory even in performing an attenuation analysis. This concurring opinion attempts to explain why it is appropriate for both opinions to consider theories of admissibility not raised at trial.

### Nature of a Motion to Suppress

It is first necessary to understand the nature of a motion to suppress evidence. A motion to suppress evidence is nothing more than a specialized objection to the admissibility of that evidence. *Galitz v. State,* 617 S.W.2d 949, 952 n. 10 (Tex.Crim.App.1981); *Montalvo v. State,* 846 S.W.2d 133, 137–38 (Tex.App.—Austin 1993, no pet.). `It is well settled that a trial court's ruling on the admissibility of evidence will not be reversed if it was correct for any reason, even one not articulated at trial.[1] *See McFarland v. State,* 845 S.W.2d 824, 846 n. 15 (Tex.Crim. App.1992) (appellate court upheld admissibility though unaware of legal basis upon which testimony admitted at trial); *Jones v. State,* 833 S.W.2d 118, 123, 125 (Tex.Crim.App. 1992) (trial court found arrest warrant affidavit sufficient; appellate court found affidavit insufficient, but switched to attenuation of taint analysis to justify admission of written confessions); *Sewell v. State,* 629 S.W.2d 42, 45–46 (Tex.Crim.App. [Panel Op.] 1982) (trial court admitted extraneous threats by defendant to show witness's state of mind, but Court of Criminal Appeals upheld admission to show intent of defendant).

In appellate review of rulings on motions to suppress, the Court of Criminal Appeals has expressly relieved the State of the burden of listing or verbalizing in the trial court every possible basis for holding a search legal to avoid waiver on appeal. *Lewis v.*

---

1. While none of the cases cited give a rationale for this rule, I suggest that it arose from some combination of judicial economy and harmless error analysis. It is simply not economical to reverse a case, requiring it to be retried, for the admission of evidence which is, in fact, admissible, merely because the wrong reason was given for admitting it. Moreover, if evidence is admissible for a reason different from that given at trial, its admission for the wrong reason is harmless error.

*State*, 664 S.W.2d 345, 347 (Tex.Crim.App. 1984) (disposing of motion to suppress ground on basis of appellant's lack of standing despite failure of State to raise standing at trial or on appeal); *Sullivan v. State*, 564 S.W.2d 698, 704 (Tex.Crim.App.1977) (op. on reh'g) (overruling *Maldonado v. State*, 528 S.W.2d 234 (Tex.Crim.App.1975), which had held State must raise issue of standing at trial to argue it on appeal, as unsupported by any precedent and clearly wrong).

### Sedani

This Court has held that the State may not raise a new theory on appeal to justify the trial court's ruling on a motion to suppress evidence. *See Sedani v. State*, 848 S.W.2d 314, 318–21 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd). In *Sedani*, the State relied on *Calloway v. State*, 743 S.W.2d 645 (Tex. Crim.App.1988). Analyzing *Calloway* and six cases on which it relied, this Court concluded the language in *Calloway*, that a decision of the trial court will be upheld on appeal if correct under any theory of law applicable to the case, meant *any theory having been raised in the trial court. Id.* at 319.

While *Sedani* may have correctly held that "neither *Calloway* nor the cases cited there allow this case to be affirmed based on the State's new theory," there do appear to be cases from the Court of Criminal Appeals that have upheld rulings on motions to suppress based on a new theory developed for the first time on appeal. *See, e.g., Williams v. State*, 726 S.W.2d 99, 100–101 (Tex.Crim. App.1986) (where the dissenting opinion criticizes the majority for addressing an argument not raised by the State at trial). In *Williams*, the Court of Criminal Appeals refused to be bound by the reasons articulated by the police officer and argued by the prosecutor when objective reasons existed for arresting the defendant. *See id.* at 101. Another court of appeals has cited *Calloway* for the proposition, "If a decision of the trial court is correct on any theory of law *which finds support in the evidence*, then the mere fact that the court may have given the wrong reason for its decision will not require reversal." *Shannon v. State*, 800 S.W.2d 896, 899 (Tex.App.—San Antonio 1990, pet. ref'd) (emphasis added).

### Legitimate Ambush Concern

While I agree more with the *Shannon* court's interpretation of *Calloway*, I recognize a legitimate concern expressed in *Sedani* regarding the State not being allowed to ambush defendants. *See Sedani*, 848 S.W.2d at 320–21. *Sedani* suggested remanding for such a defendant to have an opportunity to produce additional facts to meet the new theory as an alternative to alleviate the ambush concern. *See id.* I agree that in some cases a defendant is ambushed by application of a new theory on appeal, so that remanding the case may be more appropriate than affirming the conviction. *See and cf., Janecka v. State*, 739 S.W.2d 813, 841–42 (Tex.Crim. App.1987) (op. on reh'g) (remanding to give defendant opportunity to show harm under new theory applied, by appellate court, from case law decided after trial in this case).

In this case, the facts giving rise to "consent once removed" were developed in the course of the suppression hearing. Such facts are those common to most "buy-bust" scenarios: undercover officer enters residence to arrange for purchase of drugs; undercover officer observes suspect in possession of drugs; undercover officer leaves, but immediately signals raid team to reenter residence and arrest suspect for offense committed in presence of undercover officer. Even appellant testified that the raid team entered within one minute after the undercover officer left. There was no disagreement about the undercover officer's having observed an offense within his view while inside appellant's residence. Under these circumstances, it is difficult to conceive how a remand would help appellant develop facts to deal with the theory of consent once removed. This case boils down to an application of that theory as a matter of law to nearly uncontroverted facts giving rise to it. Therefore, the Justice Hutson–Dunn's opinion appropriately affirms appellant's conviction, rather than remanding to give appellant an opportunity to develop facts to meet a new theory applied for the first time on appeal.

## Attenuation Analysis

Even if it were not appropriate to consider a new theory on appeal in determining the lawfulness of the warrantless entry and arrest, I see no impediment to employing "consent once removed" in an attenuation analysis. It is certainly relevant to the flagrancy of police misconduct prong. If police conduct is objectively lawful, it should not be determined to be unlawful merely because the officers, the prosecutors, or the trial court attempted to justify it on the wrong basis. If the dissenting opinion were to find the officers' conduct objectively lawful, no taint should flow from it.

## Conclusion

For these reasons, I agree with use of a new theory on appeal (consent once removed) in Justice Hutson–Dunn's opinion. For the same reasons, I disagree with Justice O'Connor's dissenting opinion both for its refusal to employ the new theory of consent once removed in its consideration of the lawfulness of the warrantless entry, and for its failure to consider the new theory in its attenuation analysis.

O'CONNOR, Justice, dissenting.

This Court has held that it may not affirm the denial of an appellant's motion to suppress based on a theory that was not raised in the trial court. *Sedani v. State,* 848 S.W.2d 314, 318–21 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd) (op. on reh'g). Justice Hutson–Dunn affirms the appellant's conviction on a theory not presented to the trial court, *i.e.,* consent once removed. I would confine our review to the issues as presented to the trial court, as did the State's brief on appeal. Upon considering only the issues presented to the trial court, I believe this case should be reversed and remanded. I dissent.

## Legality of Arrest

In point of error one, the appellant contends the officers' entry into the appellant's apartment to make a warrantless arrest was not justified because the appellant did not consent to the officers' entry, and there were no exigent circumstances. The State disagrees; it claims the officers had exigent circumstances to forcibly enter the appellant's apartment without a warrant and arrest the appellant.[1]

Exigent circumstances will justify a warrantless entry into a residence to: (1) render aid or assistance to persons whom the officers reasonably believe are in need of aid or assistance; (2) protect the officers from persons whom they reasonably believe to be present and armed and dangerous; and (3) prevent the destruction of evidence or contraband. *McNairy v. State,* 835 S.W.2d 101, 107 (Tex.Crim.App.1991); *Covarrubia v. State,* 902 S.W.2d 549, 554 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd). The record shows, and the State concedes, the only exigent circumstance potentially applicable here is number (3), to prevent destruction of the cocaine before the officers had a chance to seize it.

When proving the possible destruction of evidence as an exigent circumstance, the State must show the police could have reasonably believed the evidence would be destroyed or removed before they could obtain a search warrant. *McNairy,* 835 S.W.2d at 107; *Covarrubia,* 902 S.W.2d at 554. Factors affecting the reasonableness of the officer's actions include: (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the reasonable belief contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of the contraband while a warrant is sought; (4) information indicating the possessors of the contraband are aware the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in narcotics trafficking. *McNairy,* 835 S.W.2d at 107; *Covarrubia,* 902 S.W.2d at 554.

On cross-examination, Officer Redman related his reasons for believing the cocaine was about to be destroyed. First, Redman

1. The State did not argue the "consent once removed" theory before the trial court.

testified he knew cocaine is water soluble and could be disposed of easily. Second, Redman testified there were numerous sinks in the residence. Third, Redman testified as to the primary reason he believed the appellant was about to destroy the cocaine:

I guess the primary factor would be my contact in dealing with [the appellant]. His attitude that the statements, direct statements that he made to me regarding the length of time he had been doing business, never been caught, refused to be caught, his ability to run the show, et cetera, would be the primary—his attitude. Also understanding ... the manner in which cocaine can be destroyed, the availability of water as far as the different sinks in the residence, understanding the compound or the make-up of that cocaine, hydrochloride, all lead to the decision.

I would hold this evidence by itself does not establish the officers acted under exigent circumstances. Redman conceded on cross-examination he did not see the appellant or Griffin trying to destroy the cocaine, nor did they specifically state any intention to destroy the cocaine. Neither would I find Griffin's slam of the door to avoid arrest dispositive because it occurred as the officers were approaching the apartment to execute the arrest.

Police officers cannot justify a warrantless search based on exigent circumstances they deliberately create. *United States v. Munoz–Guerra*, 788 F.2d 295, 298 (5th Cir.1986); *United States v. Thompson*, 700 F.2d 944, 950 (5th Cir.1983). For example, in *Munoz–Guerra*, DEA agents knocked on the back door of the patio of a condominium of the defendant, a person suspected of selling drugs. 788 F.2d at 297. When the defendant came to the door, the agents ordered him to put his hands on the glass panes of the door, then reach down and open the door. *Id.* The door was locked. *Id.* The defendant indicated he would get the key from another room. *Id.* Because the agents thought the defendant would get a gun or attempt to destroy evidence, the agents kicked the door in and entered the condominium. *Id.* Once inside, the agents conducted a security check and found marijuana, co-

caine, and two pistols. *Id.* The Fifth Circuit held the agents knew once they made their presence known by knocking on the patio door, they would be required to conduct a security search of the house and restrain the inhabitants. The court said:

Warrantless entry was thus a foregone conclusion the instant the agents revealed themselves to Munoz–Guerra at the patio door.

.   .   .   .   .

Our past opinions have consistently emphasized that without reason to believe that a criminal suspect was aware of police surveillance, the mere presence of firearms or destructible, incriminating evidence does not create exigent circumstances.

*Id.* at 298. The court held the agents had created the exigent circumstances, reversed the ruling on the motion to suppress, and remanded the case for the defendant to re-plead. *Id.* at 298–99. In *Thompson*, the Fifth Circuit remanded the motion to suppress to the trial court for specific findings on whether the agents deliberately created the exigent circumstances. *Thompson*, 700 F.2d at 944, 952–53.

The State also contends the appellant's attempt to flush the cocaine down the toilet, along with the gun shot, constituted exigent circumstances that justified a warrantless entry into the appellant's apartment. I disagree. Both of these events occurred after the police entered the appellant's apartment. Therefore, the police did not have knowledge of these facts when deciding to arrest the appellant without a warrant and force their way into his residence.

I would hold there were no exigent circumstances to justify the forced entry into the appellant's apartment without a warrant to arrest the appellant. By giving a "bust" signal for a warrantless arrest, Officer Redman created exigent circumstances that made the warrantless entry into the apartment a foregone conclusion. *See Munoz–Guerra*, 788 F.2d at 298. Rather than giving a "bust" signal for a warrantless arrest, Redman could have completed the sale in his undercover capacity and gone to a magistrate to obtain an arrest warrant while other offi-

cers maintained surveillance of the apartment. I would hold the trial court abused its discretion by admitting into evidence the kilogram of cocaine in the bathroom toilet that officers seized incident to the appellant's illegal arrest.

I would sustain point of error one.

### Consent to Search

In point of error two, the appellant contends the trial court committed reversible error by refusing to suppress evidence obtained under the authority of a consent to search given under duress and immediately after an illegal arrest. I agree with the majority that the trial court did not err by concluding the State proved by clear and convincing evidence the appellant knowingly and voluntarily consented to the search of his apartment.

### Attenuation

Even though the appellant's consent was voluntary, because the arrest was illegal, the court must determine whether the consent was sufficiently attenuated from the arrest to permit admission of the evidence seized pursuant to the consent to search. *See Arcila v. State*, 834 S.W.2d 357, 359 (Tex.Crim.App. 1992). An illegal stop does not automatically invalidate a voluntary consent to search; conversely, a voluntary consent to search does not automatically validate a search that follows an illegal stop. *Juarez*, 758 S.W.2d at 779. The relevant question is whether the consent to search was obtained by the exploitation of an illegal arrest or detention or by means sufficiently distinguishable to be purged of the primary taint. *Id.* at 778. Evidence obtained pursuant to a voluntary consent to search is inadmissible if the consent followed an illegal arrest and there is insufficient attenuation to dissipate the taint of the arrest. *See Brick v. State*, 738 S.W.2d 676, 681 (Tex.Crim.App.1987); *Martinez v. State*, 792 S.W.2d 525, 529 (Tex.App.—Houston [1st Dist.] 1990, no pet.). The burden is on the State to prove attenuation by clear and convincing evidence. *Boyle v. State*, 820 S.W.2d 122, 132 (Tex.Crim.App.1989); *Brick*, 738 S.W.2d at 681.

In conducting an attenuation analysis, the Court of Criminal Appeals has adopted the general factors set forth in *Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975). These factors are:

(1) the giving of *Miranda* [2] warnings;

(2) the temporal proximity of the arrest and search;

(3) the presence of intervening circumstances; and

(4) the purpose and flagrancy of the officers' conduct.

*Reyes v. State*, 741 S.W.2d 414, 431 (Tex. Crim.App.1987); *Brick*, 738 S.W.2d at 678–79; *Martinez*, 792 S.W.2d at 529. The court has also set forth a more specific set of factors that partially overlap with the *Brown* factors. These factors are:

(1) proximity of the consent to the arrest;

(2) whether the seizure brought about police observation of the particular object they sought consent to search;

(3) whether the illegal seizure was flagrant police misconduct;

(4) whether the consent was volunteered rather than requested by the detaining officers;

(5) whether the arrestee was made fully aware of the fact he could decline to consent and thus prevent an immediate search of the car or residence; and

(6) whether the police purpose underlying the illegality was to obtain consent.

*Boyle*, 820 S.W.2d at 131–32; *Brick*, 738 S.W.2d at 680–81.

### The Giving of *Miranda* Warnings

Of the four prominent factors, the *Miranda* warnings are the least important when dealing with a fourth amendment challenge. *See DeVoyle v. State*, 471 S.W.2d 77, 80 (Tex.Crim.App.1971) (*Miranda* warnings, although not necessary in consent to search case, are good police practice); *Martinez*, 792 S.W.2d at 529. This is because the *Miranda* warnings do not cover a defendant's rights to refuse to consent to search. *Martinez*, 792 S.W.2d at 529. Nevertheless, the

**2.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct.   1602, 16 L.Ed.2d 694 (1966).

record shows Officer DeBlanc read the appellant his *Miranda* warnings before the appellant signed the consent to search. Further, DeBlanc told the appellant he had the right to refuse to consent to the search. While this is not required by law, it is evidence the accused gave a valid consent. *Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim.App.1991); *Martinez*, 792 S.W.2d at 529. This factor weighs in the State's favor.

### Temporal Proximity

Only 15 minutes passed between when the appellant was arrested and when he consented to the search of his residence. However, a short intervening period of time does not by itself require the evidence be suppressed for lack of sufficient attenuation. *Juarez*, 758 S.W.2d at 781. Temporal proximity is not a strong determining factor of attenuation, and some cases have characterized it as the least determinative factor involved. *Boyle*, 820 S.W.2d at 132; *Juarez*, 758 S.W.2d at 781; *Bell v. State*, 724 S.W.2d 780, 788 (Tex.Crim.App.1986). A shorter lapse of time will be tolerated when the circumstances of the detention are less severe. *See Rawlings v. Kentucky*, 448 U.S. 98, 107–08, 100 S.Ct. 2556, 2563, 65 L.Ed.2d 633 (1980); *Juarez*, 758 S.W.2d at 782.

Although the temporal proximity factor weighs in the appellant's favor, it is difficult to give it much weight by itself without considering the remaining factors. *Juarez*, 758 S.W.2d at 782. Specifically, the more important consideration is whether a significant intervening circumstance occurred during the passage of time that would allow the court to infer the taint of the illegal arrest was purged. *See Boyle*, 820 S.W.2d at 132; *Jones v. State*, 746 S.W.2d 281, 285 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd).

### Intervening Circumstances

Intervening circumstances between an illegal arrest and the seizure or procurement of the challenged evidence include: (1) taking the defendant before a magistrate before the evidence is obtained, *Jones v. State*, 833 S.W.2d 118, 125 (Tex.Crim.App.1992) (confession case); (2) arresting the defendant on a valid charge shortly after the claimed illegal arrest and detention, *Little v. State*, 758 S.W.2d 551, 566 (Tex.Crim.App.1988) (confes-

sion case); (3) permitting the defendant to consult privately with someone after the arrest, such as a companion or attorney, *Juarez*, 758 S.W.2d at 782 (consent to search case); and (4) releasing the defendant after the arrest or informing him he is free to leave, *Maixner v. State*, 753 S.W.2d 151, 156 (Tex.Crim.App.1988) (confession case); *see also Jones*, 746 S.W.2d at 286 (laundry list of intervening circumstances that might be sufficient to purge taint of illegal arrest). I find no intervening circumstances in the record of this case. Therefore, this factor weighs in the appellant's favor.

### Police Misconduct

Police misconduct is one of the most important factors to consider in an attenuation analysis. *Maixner*, 753 S.W.2d at 157; *Bell*, 724 S.W.2d at 789; *Self v. State*, 709 S.W.2d 662, 668 (Tex.Crim.App.1986). In my opinion, this factor includes many of the specific items listed in *Boyle* and *Brick*, such as whether the seizure brought about police observation of the particular object they sought consent to search and whether the police purpose underlying the illegality was to obtain consent. I must determine whether the illegal arrest had a quality of purposefulness and whether it was an expedition for evidence undertaken in the hope something might turn up. *Brown*, 422 U.S. at 605, 95 S.Ct. at 2262; *Boyle*, 820 S.W.2d at 133; *Juarez*, 758 S.W.2d at 783.

All fourth amendment violations are unreasonable, but there are practical differences between violations that dictate different outcomes. *Bell*, 724 S.W.2d at 789. The point at which the taint can be said to have dissipated is related, in the absence of other controlling circumstances, to the nature of the taint. *Brown*, 422 U.S. at 610, 95 S.Ct. at 2264 (Powell, J., concurring in part); *Bell*, 724 S.W.2d at 789. The clearest indications of attenuation should be required when the police misconduct is most flagrantly abusive. *Bell*, 724 S.W.2d at 789. Flagrant misconduct includes an arrest effectuated as a pretext for collateral objectives or an arrest that is unnecessarily intrusive on personal privacy. *Brown*, 422 U.S. at 611–12, 95 S.Ct. at 2265 (Powell, J., concurring in part); *Bell*, 724 S.W.2d at 789.

The record in this case shows the appellant did not volunteer the consent to search his residence; rather, the appellant gave his consent in response to Officer Redman's request. Further, the arrest in this case was intrusive of the appellant's personal privacy because the police forcibly entered his residence. However, the record does not show the police arrested the appellant as a pretext to get his consent to search. Officer Redman saw a kilogram of cocaine in the appellant's residence during the undercover buy, and he called the raid team to arrest the appellant and seize the kilogram because he feared the kilogram would be destroyed. Although I have concluded Officer Redman did not have sufficient basis to believe exigent circumstances justified the warrantless entry into the appellant's residence, I find no evidence in the record Officer Redman gave the "bust" signal as a pretext for obtaining a consent to search from the appellant. Rather, Redman's request for consent to search was made in response to the appellant's statement after his arrest that there were drugs in the apartment other than the kilogram of cocaine the police discovered in the toilet. In summary, concerning the fourth factor, the police conduct here, although improper based on the record before us, does not shock the conscience. The appellant himself concedes this factor probably weighs in the State's favor.

### Summary of Attenuation Factors

In this case, the *Miranda* warning and police misconduct factors weigh in the State's favor, and the temporal proximity and intervening circumstances factors weigh in the appellant's favor. Although this is a close case, I would conclude the State did not sustain its burden of proving attenuation by clear and convincing evidence. Otherwise inadmissible evidence should not be made admissible simply because the police misconduct was not too reprehensible. *Bell,* 724 S.W.2d at 790 (confession case); *see also Jones,* 746 S.W.2d at 286 (confession case). To do so would subject the protection of constitutional rights to the collective conscience of this Court. *Bell,* 724 S.W.2d at 790–91. Accordingly, I would hold the drugs seized pursuant to the appellant's consent to search were the fruit of an illegal arrest and should not have been admitted into evidence at trial.

### Harmless Error Analysis

Upon reaching this opinion, I would then consider whether the trial court's erroneous admission of the evidence was harmful. Rule 81(b)(2) of the Rules of Appellate Procedure provides an appellate court must reverse when an error occurs in the trial court unless it determine beyond a reasonable doubt the error and its effects made no contribution to the conviction or punishment. *Gipson v. State,* 844 S.W.2d 738, 741 (Tex.Crim.App. 1992); TEX.R.APP.P. 81(b)(2). When conducting a harmless error analysis, the court's role is to determine whether a rational trier of fact could have reached a different result if the error and its effects had not occurred. *Harris v. State,* 790 S.W.2d 568, 588 (Tex. Crim.App.1989). An appellate court normally determines whether an error was harmful to the defendant by considering several factors set forth in *Harris,* including the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, its probable collateral implications, and whether declaring the error harmless would encourage the State to repeat it with impunity. *Id.* at 587. However, if the record shows on its face the error complained of contributed to the defendant's conviction, an in-depth analysis is unnecessary. *See Gipson,* 844 S.W.2d at 741.

The inadmissible evidence of which the appellant complains was the basis of his conviction. Therefore, one obviously cannot determine beyond a reasonable doubt the admission of this evidence made no contribution to the appellant's conviction.

I would reverse the judgments of the trial court and remand the causes for further proceedings consistent with this opinion.

ANDELL, J., joins this dissenting opinion.

WILSON, Justice, dissenting.

I respectfully dissent from the plurality opinion en banc as it is now written. I do not join my dissenting colleagues at this point, except in result, because substantial

portions of the dissent are unnecessary given the present status of the plurality.

I agree with the premise of Justice Mirabal's concurring opinion that "there is no need to consider a new theory on appeal" if exigent circumstances (the State's theory of the case) exist to justify the warrantless entry. However, only three justices would explicitly find that facts existed *prior to entry* into the residence to legally justify the warrantless intrusion.

The plurality opinion adopts a rationale to affirm the conviction which I understand to have no precedent in Texas jurisprudence, at least under the label of "consent once removed." Further, the plurality adopts this reasoning without any analysis based on *Sedani v. State*, 848 S.W.2d 314, 318–21 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (op. on reh'g). Although concurring opinions note the importance of *Sedani*, and suggest how it might be distinguished, the plurality opinion contains no agreed basis by which this is accomplished.

This defendant stands convicted on a theory not advanced, or even mentioned by the State at trial, or more importantly, on appeal. This is not a case where the State brings forth on appeal a new argument for the admission of evidence. The defendant and his attorney learn of this "consent-once removed" standard for the first time in this court's plurality opinion. Neither the defendant nor the State has had any opportunity to argue or brief the question presented. This flies in the face of Tex.R.App.P. 74(f). Failure to comply with this rule preserves nothing for review. *See Ex parte Jamail*, 926 S.W.2d 752, 752 (Tex.Crim.App.1996); *State v. Gonzalez*, 855 S.W.2d 692, 697 (Tex. Crim.App.1993).

On the theory of the case argued before the trial court, and on appeal, six justices explicitly say there are no exigent circumstances in the evidence that permit lawful entry of the officers across the threshold of the house. Three justices (Schneider, Cohen & Mirabal) directly state that exigent circumstances are present, thereby providing legal justification for the entry by the officers. The six votes cast determining there were no exigent circumstances would seemingly compel the court to reverse on the grounds briefed and argued, yet the defendant stands convicted on a theory advanced by this court *sua sponte*.

Because I cannot determine with sufficient certainty upon what agreed basis the six votes exist to affirm this conviction, I respectfully dissent.