In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00134-CR


______________________________




PAMELA MARIE SUMPTER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 209th Judicial District Court


Harris County, Texas


Trial Court No. 877518




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Carter



O P I N I O N



 A jury convicted Pamela Marie Sumpter of felony possession of a controlled substance in the
209th Judicial District Court of Harris County. The trial court imposed a sentence of five years'
confinement. From this conviction, Sumpter appeals bringing forth three points of error as to the
trial court's rulings on her motions to suppress physical evidence and certain oral statements, and its
admission of evidence, complaining that the evidence was illegally obtained and, therefore, should
have been excluded under United States and Texas Constitutions and Articles 38.22 and 38.23 of
the Texas Code of Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon 1979
& Supp. 2003), art. 38.23 (Vernon Supp. 2003).

Factual and Procedural History

 Acting on a tip from a citizens' hotline, Deputies Eric Clegg and John Palermo of the Harris
County Sheriff's Department drove to 1325 Hartwick Lane where Sumpter, her boyfriend, Gabriel
McKinney, and Sumpter's four-year-old son lived. The officers knocked on the door, introduced
themselves as Deputies Clegg and Palermo of the Harris County Sheriff's Department, and asked
permission to come in and speak with her. 

 Sumpter swung the door open wide and stepped aside, as in a gesture inviting the officers to
enter the residence. Once inside, the deputies asked Sumpter and McKinney questions for
identification purposes. Clegg then asked Sumpter whether there was anyone else in the residence,
and she replied there was not. Clegg asked her whether she minded if they conducted "a protective
sweep just to make sure for [their] safety" that no one else was in the home. Sumpter replied that
there was no one else and that they could "go ahead and look." 

 Clegg conducted a quick search of the areas within the residence where a person might be
found. While in the bedroom, Clegg observed on the bedside table a plastic bag containing what
Clegg immediately recognized to possibly be crack cocaine. Clegg seized the plastic bag, completed
the "protective sweep," and returned to the living room, where Palermo had remained with Sumpter
and McKinney. 

 Clegg informed Sumpter they were conducting a narcotics investigation based on a complaint
from a citizens' hotline. He then offered her a consent to search form, which she refused to sign. 
Clegg revealed to her the plastic bag recovered from the bedroom, to which Sumpter responded that
she "want[ed] to talk about that." The record shows and Sumpter concedes that, at this point,
Palermo read Sumpter her rights while Clegg stepped outside to perform a field test on the substance
and to call the district attorney's office. Sumpter indicated she understood her rights and continued
to want to talk to the deputies. Palermo asked her whether she had any more narcotics in the
residence, to which she answered by pulling out a partial "cookie" of crack cocaine. Again, Palermo
asked whether she had any more narcotics. This time, Sumpter pointed to the kitchen table, where
Palermo discovered a plate containing several more rocks of crack cocaine. 

 Clegg came back inside the home, and Palermo showed him both items of evidence. Clegg
stated Sumpter told the officers she would now be willing to sign the consent to search form. Clegg
decided to forego a further search based on her consent and, instead, left the residence to obtain a
search warrant. The deputies executed the warrant on Clegg's return. The warranted search yielded
a loaded stolen handgun from the bedroom closet, a plastic bowl containing white residue later
determined to be crack cocaine residue, and some prescription medication in a plastic bag. 

 Sumpter moved to suppress physical evidence and oral statements. The trial court denied
both motions. The trial court admitted the evidence at trial without objection. 

Preservation of Error

 When the State offered the drugs seized at Sumpter's residence, the following exchange took
place:

 [State's Counsel]: Your Honor, State offers 1, 2, 3, and 5 into evidence after
tendering same to opposing counsel.


 . . . . 


 THE COURT: Mr. Durant.


 [Defense Counsel]: I need to see them, Judge.


 . . . .


 [Defense Counsel]: May I approach the bench, Your Honor?


 THE COURT: You may.


 (At the bench, on the record)


 [Defense Counsel]: We have no objections to showing 1, 2, and 3. She's not
charged with the pills, No. 5.


 (Open court, Defendant and jury present)


 THE COURT: There is no objection to 1, 2, and 3. Is that No. 5?


 [State's Counsel]: Yes, Your Honor, it is No. 5.

 

 THE COURT: 1, 2, and 3 are admitted for the jury's consideration.

State's Exhibits 1 through 3 are the 3.3 grams of crack cocaine contained in the plastic bag seized
from the bedroom table, the partial "cookie" consisting of 8.1 grams of crack cocaine Sumpter gave
to Palermo, and the 4.3 grams of crack cocaine located on the kitchen table, respectively.

 While the defense need not object to the admission of the evidence that is the subject of a
motion to suppress, nothing is preserved for review when the defense affirmatively states it has no
objection to the admission of the items challenged in a motion to suppress. See McGrew v. State,
523 S.W.2d 679, 680-81 (Tex. Crim. App. 1975); see also Harris v. State, 656 S.W.2d 481, 484
(Tex. Crim. App. 1983) (defense stated "no objection" to the admission of items found in the car of
the appellant convicted of burglary). This is treated as a waiver of "any reliance upon the ruling
made on the motion to suppress." McGrew, 523 S.W.2d at 681 (distinguishing the facts before them
from those in Graves v. State, 513 S.W.2d 57, 59 (Tex. Crim. App. 1974), where counsel simply
voiced no objection). The distinction between the McGrew and Graves cases lies in the affirmative
statement that the defense has no objection to the admission of the evidence in question, rather than
merely making no objection to the evidence. By affirmatively stating it had no objection to the
admission of those items of evidence challenged in the motion to suppress, the defense waived error
as to the legality of the search and seizure through which the officers obtained the items of evidence.

 Even if Sumpter had not waived error, we would find no reversible error as to the trial court's
ruling on the motions to suppress and its admission of the evidence. In reviewing a trial court's
ruling on a motion to suppress, we give almost total deference to the trial court's determination of
historical facts and review de novo its application of the law. Carmouche v. State, 10 S.W.3d 323,
327 (Tex. Crim. App. 2000). When, as here, the trial court made no explicit findings of fact, we will
review the evidence in a light most favorable to the trial court's ruling. See State v. Ballard, 987
S.W.2d 889 (Tex. Crim. App. 1999). Similarly, we will not reverse the trial court's determination
on the admissibility of evidence absent a clear abuse of discretion. Williams v. State, 535 S.W.2d
637, 639-40 (Tex. Crim. App. 1976).

 Consent

 Consent to search is a well-established exception to the constitutional requirements of both
probable cause and a warrant. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); Carmouche,
10 S.W.3d at 331. The State must demonstrate by clear and convincing evidence (1) that an accused
gave consent positively and unequivocally, and not as a result of actual or implied coercion. See
Lopez v. State, 663 S.W.2d 587, 590 (Tex. App.-Houston [1st Dist.] 1983, pet. ref'd). 

 It is possible for a person to give limited consent that does not authorize a full-scale search
of the person's property. For example, officers can obtain consent to look for a specific person or
to go to a location to secure the premises. See Cole v. State, 484 S.W.2d 779, 783 (Tex. Crim. App.
1972). This consent, however, does not operate as consent for a full investigatory search. See id.
(concluding consent to "look around" did not constitute consent to search the premises).

 The record supports a finding by clear and convincing evidence that Sumpter gave the
deputies consent to conduct a limited search of her residence. According to the deputies' testimony,
they entered the home with Sumpter's permission and had not drawn their weapons. Sumpter gave
them consent in a matter-of-fact manner to "go ahead and look." She appeared curious but
cooperative, and her demeanor remained steady throughout the encounter. Her consent was
unequivocal, and the deputies testified she did not withdraw her consent at any time during the
"protective sweep." 

 When the accused and the police officers present conflicting versions of the circumstances
surrounding the search, it is the trial court's duty as trier of fact to resolve the conflicts, and the trial
court is authorized to believe the officer's account and disbelieve that of the accused. Stephenson
v. State, 494 S.W.2d 900, 904 (Tex. Crim. App. 1973); Martinez v. State, 792 S.W.2d 525, 529 (Tex.
App.-Houston [1st Dist.] 1990, no pet.). Considering the evidence in the light most favorable to the
trial court's ruling, we hold that the trial court could have reasonably concluded the State provided
clear and convincing evidence that Sumpter freely and voluntarily gave consent to the officers. 

 Plain View 

 We also conclude Clegg did not exceed the scope of Sumpter's limited consent when he
seized the plastic bag from the bedside table. Officers who have been invited onto premises may
seize contraband discovered in plain view if the initial intrusion is proper and if the officer
immediately recognizes the item as evidence. Alberti v. State, 495 S.W.2d 236, 237 (Tex. Crim.
App. 1973); Beaver v. State, 106 S.W.3d 243, 249 (Tex. App.-Houston [1st Dist.] 2003, no pet.).

 Here, Clegg acted within the scope of the limited search, for which he requested and obtained
Sumpter's permission. Specifically, Clegg had effective consent to look for others on the premises
who might pose a threat to the officers' safety. Therefore, he was in a lawful position at the time he
found the crack cocaine. He, unlike the officers in Cole who exceeded the scope of the limited
consensual search when they searched inside an overnight bag, remained within the scope of this
limited search. While Clegg searched only places where a person could have been hiding, he
discovered the plastic bag containing crack cocaine on the top of a bedside table. Clegg testified he
did not have to move or shift anything on the table in order to see the plastic bag. Clegg further
testified that, when he detected the bag on the table, he "immediately recognized it to be possibly
crack cocaine." 

 The trial court did not abuse its discretion in denying Sumpter's motions to suppress, since
clear and convincing evidence supports the finding that she gave the officers consent to "go ahead
and look" for anyone else who might have been in the home and since the limited search based on
that consent did not exceed its scope when the deputy found the contraband in plain view from a
vantage point lawfully gained.

 Arrest

 In her third point of error, Sumpter complains of the admission into evidence of the several
ounces of crack cocaine and various statements she made to the officers during their encounter. She
contends that the evidence and the statements were products of an illegal arrest and, as such, were
subject to exclusion under United States and Texas Constitutions and that the unrecorded statements
were inadmissible under Article 38.22 of the Texas Code of Criminal Procedure. Again, we
conclude that, even if Sumpter had preserved her complaint for our review, we would have found
no reversible error.

 Her contention is premised on the illegality of the "protective sweep." She concedes Palermo
gave her Miranda (2) warnings, but argues that the evidence and her statements are not sufficiently
attenuated from the initial illegality of the warrantless search. In order for her argument to have a
basis, we would have to conclude that the "protective sweep" was illegal and proceed to analyze the
evidence and statements in question in that manner. Having concluded Sumpter freely and
voluntarily consented to this safety search, thus making it a legal search, we do not need to determine
whether the taint of the search is sufficiently attenuated.

 Sumpter also contends her statements to the deputies are inadmissible under Article 38.22
of the Texas Code of Criminal Procedure. She asserts the deputies arrested her immediately
following the illegal "protective sweep" of her residence and her refusal to sign the proffered consent
form. (3) Generally, an oral statement made as a result of custodial interrogation is inadmissible unless
the statement is recorded, the accused is given warnings, and other requirements are satisfied. Tex.
Code Crim. Proc. Ann. art. 38.22, § 3(a)(1)-(5). However, if this statement contains assertions of
fact that are found to be true and conduce to establish guilt, then such requirements do not apply and
the statement may be admissible. Tex. Code Crim. Proc. Ann. art. 38.22, § 3(c). Even assuming
the deputies arrested Sumpter at the time she asserts, her statement would still be admissible,
although unrecorded, under Article 38.22.

Conclusion

 For the foregoing reasons, we affirm the judgment of the trial court.



 Jack Carter

 Justice


Date Submitted: August 27, 2003

Date Decided: September 11, 2003


Do Not Publish


1. Although the United States Constitution only requires the State to prove the voluntariness
of consent by a preponderance of the evidence, the Texas Constitution requires the State to show by
clear and convincing evidence that the consent was freely given. Compare United States v. Hurtado,
905 F.2d 74, 76 (5th Cir. 1990) (applying the federal preponderance of the evidence standard), with
State v. Ibarra, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997) (applying Texas' clear and convincing
evidence standard).
2. Miranda v. Arizona, 384 U.S. 436 (1966).
3. An arrest occurs when a person "has been actually placed under restraint or taken into
custody," whether by the execution of an arrest warrant or by one acting without a warrant. Tex.
Code Crim. Proc. Ann. art. 15.22 (Vernon 1977). The issue is whether a reasonable person would
have interpreted the officer's words and actions as an arrest. California v. Hodari D., 499 U.S. 621,
628 (1991).