

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00534-CR

DON ANTHONY BONNER                                                    APPELLANT

V.

THE STATE OF TEXAS                                                           STATE

----------

### FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant Don Anthony Bonner appeals his conviction for unlawful possession of a firearm by a felon. *See* Tex. Penal Code Ann. § 46.04(a) (West 2011). We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Appellant's mother Mary Bonner passed away on January 22, 2012. After Mary's funeral on January 28, 2012, Appellant, his wife Marguerita Bonner, his brother Virdis Bonner, Virdis's fiancée Shekelia Campbell, and Virdis's stepdaughter Keiumbria (Bree) Nelson went to Mary's house at 2804 Gardenia Drive in Fort Worth. Around 7:30 that evening, Appellant asked his brother and his brother's family to leave so that Appellant could return to his home, which was located on Avenue M, and change clothes. Virdis asked Shekelia and Bree to go to their car and wait for him. Shekelia and Bree heard Appellant and Virdis arguing about why Appellant had asked them to leave. Marguerita and Shekelia broke up the argument between the brothers, and Shekelia got Virdis to leave. As Shekelia and Virdis were getting in their car, they saw Appellant standing in the garage with a gun in his hand, yelling at Virdis. Virdis called 911.

When police arrived, they obtained Appellant's oral and written consent to search the residence, and he told them that there was a handgun in a dresser in the back bedroom. A search of the residence revealed a loaded handgun in the dresser, ammunition, and two magazines—one in the dresser drawer with the gun and another in the kitchen.

## III. MOTION TO SUPPRESS

In his second point, Appellant argues that the trial court erred by overruling his motion to suppress the firearm, magazines, and ammunition that police seized from the Gardenia Drive house because his consent to search was involuntary.

### A. Standard of Review and Law on Consent Searches

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). A warrantless police entry into a person's home is presumptively unreasonable unless it falls within the scope of one of a few well-delineated exceptions. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043–44 (1973); *Johnson v. State*, 226 S.W.3d 439, 443 (Tex.

3

Crim. App. 2007). One such exception is a consensual entry. *Schneckloth*, 412 U.S. at 219, 93 S. Ct. at 2043–44; *Johnson*, 226 S.W.3d at 443.

The validity of an alleged consent to search is a question of fact to be determined from the totality of the circumstances. *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010). Consent "must 'not be coerced, by explicit or implicit means, by implied threat or covert force.'" *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000) (quoting *Schneckloth*, 412 U.S. at 228, 93 S. Ct. at 2048). Nor is consent voluntary when it results from "'no more than acquiescence to a claim of lawful authority.'" *Id.* (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S. Ct. 1788, 1792 (1968)). Although the United States Constitution requires the State to prove the voluntariness of consent by a preponderance of the evidence, the Texas Constitution requires clear and convincing evidence. *See id.* Because issues of consent are necessarily fact intensive, a trial court's finding of voluntariness must be accepted on appeal unless it is clearly erroneous. *Johnson*, 226 S.W.3d at 443.

## B. Voluntariness of Appellant's Consent to Search

Here, officers responded to a 911 call about an aggravated assault at the Gardenia Drive residence. After performing a protective sweep of the house, two officers took Appellant and Marguerita inside the house and talked to them while seated at the kitchen table. They told Appellant that he had two options: (1) cooperate with the officers by consenting to a search of the house, or (2) refuse consent, in which case the officers would obtain a search warrant. An officer

4

read Appellant the consent to search form, and Appellant signed the form approximately forty-five minutes after officers arrived. Appellant also told the officers where to find the gun.

The officers' informing Appellant that they would obtain a search warrant if he did not consent to a search did not invalidate his consent. *See Resendez v. State*, 523 S.W.2d 700, 703 (Tex. Crim. App. 1975) (noting that officer's assertion that he could obtain search warrant if defendant refused consent does not, standing alone, invalidate otherwise voluntary consent); *Williams v. State*, 937 S.W.2d 23, 29 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (same). Officers did not threaten any consequence other than obtaining a search warrant if Appellant refused consent. They did not threaten to "tear the house apart" during a search pursuant to the search warrant. They did not draw their guns, place Appellant in handcuffs, or arrest him prior to obtaining his consent to search. Considering all of the circumstances and giving proper deference to the trial court's findings, we hold that the totality of the circumstances supports the trial court's ruling that Appellant's consent to search was voluntarily given.[2] *See*

---

[2]Although not at issue in this appeal, we note that, after hearing evidence on Appellant's standing to contest the search, the trial court ruled in favor of Appellant on the standing issue, finding that Appellant had a legitimate expectation of privacy in the Gardenia Drive house. *See State v. Betts*, 397 S.W.3d 198, 203–04 (Tex. Crim. App. 2013) (noting that ownership of the home is only one factor to consider in determining whether a person has a reasonable expectation of privacy); *Luna v. State*, 268 S.W.3d 594, 603 (Tex. Crim. App. 2008) (noting that an overnight guest has a reasonable expectation of privacy in his host's house), *cert. denied*, 558 U.S. 833 (2009).

*Valtierra*, 310 S.W.3d at 448; *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). Accordingly, we hold that the trial court did not err by overruling Appellant's motion to suppress based on the voluntariness of his consent, and we overrule Appellant's second point.

## IV. SUFFICIENCY OF THE EVIDENCE

In his first point, Appellant argues that the evidence is insufficient to sustain his conviction because the State failed to prove that the Gardenia Drive house was not the "premises at which [he] lives" for purposes of the offense of unlawful possession of a firearm by a felon. Tex. Penal Code Ann. § 46.04(a)(2).

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Wise*, 364 S.W.3d at 903. Thus, when performing an evidentiary sufficiency review, we

6

may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Wise*, 364 S.W.3d at 903.

Penal code section 46.04 provides that a person who has been convicted of a felony and who possesses a firearm "at any location other than the premises at which the person lives" commits the offense of unlawful possession of a firearm. Tex. Penal Code Ann. § 46.04. The term "premises" and phrase "premises where he lives" are not expressly defined in the penal code. The obvious intent of the statute proscribing possession of firearms by convicted felons is to keep violent offenders from going about with firearms. *Lucas v. State*, 791 S.W.2d 35, 64 (Tex. Crim. App. 1989).

At trial, both parties presented evidence concerning whether the Gardenia Drive house was "the premises at which [Appellant] live[d]" on the day of Mary's funeral. Tex. Penal Code Ann. § 46.04.

Shekelia testified that Mary lived alone in the Gardenia Drive house through the date of her death. Shekelia said that she and Virdis visited Mary about twice a week and never saw Appellant living there.

7

The trial court admitted into evidence the following documents that list as Appellant's residence the Avenue M house, where Marguerita also lived: the appearance bond in this case, signed by Appellant; an affidavit of indigency signed by Appellant and requesting a court-appointed attorney for this case; and a "Bond Desk Inquiry" created when Appellant bonded out of jail. One of the responding officers testified that Appellant's driver's license lists his address as the Avenue M address. The officer testified that he initially thought the Gardenia Drive house was Appellant's residence when he arrived there in response to the 911 call but that by the end of his investigation, he concluded that Appellant did not live at the Gardenia Drive house.

Appellant presented evidence that his mother bequeathed the Gardenia Drive house to him in her will, although the will had not been probated at the time of the offense. Marguerita also testified that Appellant went to live with his mother at the Gardenia Drive house when she became ill in October and was living there when Mary died in January. Marguerita also said that Appellant moved in with his mother because he and Marguerita were having marital troubles. She was shown photographs of items found in Mary's bedroom in the Gardenia Drive house and identified those items—pajama pants, a t-shirt, a blue robe, and a heating pad—as belonging to Appellant. She said that Appellant usually slept in the middle bedroom but slept in his mother's bedroom after she died. Appellant's aunt, Mary's sister, testified that Mary lived with her when she became ill and that, later, Mary returned to her home and Appellant moved in

8

with her. Contrary to Marguerita's testimony that Appellant moved in with his mother in October, Appellant's aunt testified that Mary lived with her until sometime after Christmas or New Year's Eve before Mary returned to her house and Appellant began living with her. Appellant's daughter also testified that he was living at the Gardenia Drive house when Mary died.

The jury, as the trier of fact, resolved any conflict in the evidence about whether the Gardenia Drive house or the Avenue M house was "the premises at which [Appellant] live[d]" in the State's favor, and we may not re-evaluate their credibility determinations. *See Isassi*, 330 S.W.3d at 638. The jury, as the sole judge of the credibility of the witnesses, could have disbelieved Appellant's witnesses. The State presented sufficient evidence, including Shekelia's testimony and the documentary evidence showing that Appellant listed the Avenue M address as his address in documents executed shortly after his arrest in this case, to support the jury's determination that Appellant possessed a firearm "at any location other than the premises at which [he] live[d]." *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi*, 330 S.W.3d at 638; *see also* Tex. Penal Code Ann. § 46.04. We overrule Appellant's first point.

9

## V. CONCLUSION

Having overruled Appellant's two points, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL:  GARDNER, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  December 27, 2013